**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PANOS TSOLAINOS** | **CIVIL ACTION** |
| **versus** | **NO. 10-3387** |
| **BURL CAIN** | **SECTION: "N" (3)** |

**REPORT AND RECOMMENDATION**

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Panos Tsolainos, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On October 23, 1999, he was convicted of second degree murder under Louisiana law.[1] On April 26, 2000, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] The Louisiana First Circuit Court of Appeal

---

[1] State Rec., Vol. XIII of XXIII, trial transcript, p. 2277; State Rec., Vol. I of XXIII, minute entry dated October 22, 1999; State Rec., Vol. II of XXIII, jury verdict form.

[2] State Rec., Vol. XIV of XXIII, transcript of April 26, 2000, p. 141; State Rec., Vol. I of XXIII, minute entry dated April 26, 2000.

affirmed that conviction and sentence on December 31, 2003.[3] Petitioner's related writ applications were then denied by the Louisiana Supreme Court on July 2, 2004,[4] and by the United States Supreme Court on February 28, 2005.[5]

On July 5, 2006, petitioner, through counsel, filed with the state district court an application for post-conviction relief. That application was denied on October 9, 2007.[6] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 10, 2008,[7] and by the Louisiana Supreme Court on October 9, 2009.[8]

On October 8, 2010, petitioner, through counsel, filed the instant application for *habeas corpus* relief.[9] The state argues that the federal application is untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a criminal judgment is

---

[3] State v. Tsolainos, No. 2000 KA 1664 (La. App. 1st Cir. Dec. 31, 2003) (unpublished); State Rec., Vol. XIX of XXIII. The Court of Appeal denied petitioner's application for rehearing on February 9, 2004. State Rec., Vol. XX of XXIII.

[4] State v. Tsolainos, 877 So.2d 144 (La. 2004) (No. 2004-K-0616); State Rec., Vol. XVII of XXIII.

[5] Tsolainos v. Louisiana, 543 U.S. 1186 (2005).

[6] State Rec., Vol. XVIII of XXIII, Order dated October 9, 2007.

[7] State v. Tsolainos, 997 So.2d 46 (La. App. 1st Cir. 2008) (No. 2007 KW 2443); State Rec., Vol. XXIII of XXIII.

[8] State v. Tsolainos, 19 So.3d 6 (La. 2009) (No. 2008-KP-2653); State Rec., Vol. XVIII of XXIII.

[9] Rec. Doc. 1.

considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[10] As the parties correctly note,[11] petitioner's conviction became final on February 28, 2005, when the United States Supreme Court denied his petition for a writ of certiorari. Howland v. Quarterman, 507 F.3d 840, 843 (5th Cir. 2007); Giesberg v. Cockrell, 288 F.3d 268 (5th Cir. 2002).

The parties also correctly note that petitioner's federal application is untimely unless he is granted equitable tolling.[12] However, the parties disagree as to whether equitable tolling is warranted.

I. Factual Background

In his declaration supporting his bid for equitable tolling, petitioner recounts his version of the legal missteps which occurred in this case. He explains that he was represented at his criminal trial by Robert Stern and Kimberly Abramson and throughout the direct appeal process by

---

[10] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

[11] Rec. Doc. 1, p. 46; Rec. Doc. 14, p. 2.

[12] Rec. Doc. 1, pp. 46-47; Rec. Doc. 14, p. 3. As noted, petitioner's conviction and sentence became final on February 28, 2005. Under normal circumstances, he would have had only until February 28, 2006, to file a federal *habeas corpus* application challenging that conviction and sentence. However, petitioner argues that his deadline was extended for an additional eighty-six days, i.e. until May 25, 2006, due to former Chief Judge Helen G. Berrigan's suspension of all prescriptive periods in this Court from September 1, 2005, through November 25, 2005, as a result of Hurricane Katrina. See, e.g., Mark v. Michael, Civ. Action No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sept. 23, 2008). Nevertheless, even if that is accurate, petitioner acknowledges that he also failed to meet that later deadline and that he therefore is not entitled to statutory tolling of the limitations period pursuant to 28 U.S.C. § 2244(d)(2). Rec. Doc. 1, pp. 46-47.

Mr. Stern, Ms. Abramson, and Lewis Unglesby. After that direct review process concluded, petitioner began seeking collateral review. In his post-conviction proceedings, he terminated his relationship with Mr. Stern and was represented by Ms. Abramson, Neil Abramson,[13] and former United States Attorney Harry Rosenberg.

During the course of that representation, the Abramsons informed petitioner that he could not seek federal *habeas corpus* relief until he first exhausted his post-conviction remedies in state court. Petitioner states that he therefore instructed Ms. Abramson to file a state post-conviction application as soon as it was prepared. While his attorneys were allegedly working on the state post-conviction application, Hurricane Katrina struck New Orleans. Petitioner alleges that although he continued to urge his counsel to file the state application without delay, the application was not in fact filed until July 5, 2006.

That July 5 filing date is critical for the purposes of this proceeding. Although that date fell well within the two-year state limitations period for seeking post-conviction relief, see La.C.Cr.P. 930.8(A), it fell outside the significantly shorter one-year federal limitations period. As a result, by waiting so long to seek state post-conviction relief, counsels' actions and inactions foreclosed petitioner's ability to seek review of his conviction in a federal *habeas corpus* proceeding. Unfortunately, at that time, neither petitioner nor his various attorneys were aware of that adverse consequence. On the contrary, they labored under the misunderstanding that the one-year federal limitations period did not even commence until the *conclusion* of the state post-conviction proceedings. That clearly is not the law. See, e.g., Flanagan v. Johnson, 154 F.3d 196,

[13] Neil Abramson is the husband of Kimberly Abramson.

199 n.1 (5th Cir. 1998) ("Under the plain language of the statute, any time that passed between the time that Flanagan's conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one year period of limitation."); Rolland v. Prince, Civ. Action No. 10-3883, 2011 WL 1675174, at *3-4 (E.D. La. Apr. 1, 2011), adopted, 2011 WL 1597547 (E.D. La. Apr. 25, 2011).

After the state post-conviction proceedings finally concluded, the Abramsons were to turn their attention to seeking relief from the federal courts. However, after a dispute with Ms. Abramson, petitioner decided to fire the Abramsons and proceed with only Mr. Rosenberg. When informed that Mr. Rosenberg was unwilling to continue the representation unless the Abramsons remained on the team, petitioner fired all three of the attorneys. It was at that point that he sought additional legal advice and learned that, absent tolling, his federal limitations period had expired before his state application was filed. Undeterred, petitioner, through new counsel, nevertheless filed the instant federal application, arguing that the Abramsons' errors were so egregious as to equitably toll the AEDPA's limitations period.

The Abramsons have filed their own affidavits with this Court to explain their version of events. Despite contesting some of petitioner's allegations concerning themselves and their representation, they candidly admit the most important fact: they misunderstood how to calculate the AEDPA's limitations period.[14]

---

[14] Affidavit of Kimberley Lieder Abramson, pp. 5-6; Affidavit of Neil C. Abramson, p. 7. The Court notes that the Abramsons' submissions are highly unusual, in that they are not parties to this case and are no longer involved in this matter in any way. Nevertheless, their affidavits are relevant to the issue of equitable tolling, and the Court has the authority to allow such affidavits into the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District

II. Applicable Law and Analysis

It is clear that the AEDPA's limitations period is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). That said, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Petitioner argues that such an "extraordinary circumstance" exists here because his lawyers' failure to adequately research or understand the law impinged on his ability to file a timely federal application. For the following reasons, the undersigned finds that equitable tolling is not warranted.

Until recently, it was clear in this Circuit that equitable tolling of the AEDPA's limitations period could not be based on attorney error. In Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals explained:

> Many courts have considered the question whether attorney error constitutes "rare and exceptional circumstances" and have held that it does not.[FN4] Additional support for the proposition that attorney error does not trigger equitable tolling is the longstanding rule that prisoners are not entitled to counsel during habeas

---

Courts. Moreover, although petitioner opposed submission of the affidavits, he is not prejudiced in any way by their inclusion in the record. Indeed, he correctly notes that the affidavits actually support his main contention that the Abramsons failed to understand the federal limitations period.

proceedings and thus cannot state a claim for ineffective assistance during those proceedings. See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

> [FN4] See United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (holding that the death of the attorney's father two weeks before filing deadline did not constitute extraordinary circumstance for equitable tolling purposes); Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000) (holding that attorney's confusion over applicability of § 2244(d)(1) did not justify equitable tolling), cert. denied, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001); Harris v. Hutchinson, 209 F.3d 325, 330-31 (4th Cir. 2000) (holding that attorney's mistaken interpretation of § 2244(d) limitation provision did not justify equitable tolling); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999) (holding that attorney's miscalculation of limitations period was not valid basis for equitable tolling); Sandvik v. United States, 177 F.3d 1269, 1272 (11th Cir. 1999) (holding that untimeliness resulting from attorney's use of ordinary mail did not justify equitable tolling).

Cousin, 310 F.3d at 848 & n. 4. The Fifth Circuit then held: "[W]e join the other circuits that have considered this issue and hold that mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." Id. at 849. In a subsequent case, the Fifth Circuit noted: "If there was ever any doubt that an attorney's error or neglect does not warrant equitable tolling, our recent decision in Cousin ... erased it ...." United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002). The Court concisely stated: "Ineffective assistance of counsel is *irrelevant* to the tolling decision." Id. (emphasis added). It was held that although error or neglect may warrant professional discipline of the attorney, it simply would not justify equitable tolling of the AEDPA's statute of limitations. Id.

The United States Supreme Court had traditionally shared that view. For example, in a case in which a petitioner had been sentenced to death, the Supreme Court rejected such a bid for equitable tolling, holding:

> [Petitioner] argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.

Lawrence v. Florida, 549 U.S. 327, 336-37 (2007).

However, the United States Supreme Court recently carved out a limited exception to that general rule. In Holland v. Florida, 130 S.Ct. 2549, 2564 (2010), the Court held that, while a "garden variety claim of misconduct," such as a simple miscalculation of a deadline, does not warrant equitable tolling, such tolling may be warranted by "far more serious instances of attorney misconduct." Unfortunately, since Holland was decided, the United States Supreme Court and the various Circuit Courts of Appeals have offered little guidance as to precisely where the line is drawn separating a "garden variety claim of misconduct" which does not warrant tolling from egregious misconduct which does. Nevertheless, for the following reasons, this Court finds that the line was not crossed in the instant case.

As an initial matter, despite the various aspersions cast about in this case, the errors here do not even begin to approach the level of misconduct recounted in Holland. In Holland, there was an almost complete breakdown in communication between Holland and his counsel. For example, for a two-year period during which post-conviction relief was being sought in the state

courts, the attorney "communicated with Holland only three times – each time by letter." 130 S.Ct. at 2555. The breakdown was so severe that Holland repeatedly contacted the state courts asking that his attorney be removed from the case and even filed a complaint with the bar association. Those efforts met with no success. Id. at 2555-56. Holland therefore continued to write to his attorney, informing him that, if the Florida Supreme Court denied relief, the attorney must quickly seek relief in federal court before the deadline for doing so expired. Ignoring those letters, the attorney failed even to inform Holland when the Florida Supreme Court denied relief, much less file a timely federal application to preserve Holland's rights. Id. at 2556-57.

When he finally contacted Holland, the attorney explained that he planned to file a petition for a writ of certiorari with the United States Supreme Court. Holland immediately responded to that letter, correctly explaining to his attorney that such an application would not toll the federal limitations period. The attorney later wrote Holland, incorrectly stating that the federal deadline had passed before the attorney was even appointed in the state proceedings. Holland again immediately responded, pointing out the attorney's legal errors in calculating the deadline and begging him to file a federal application without delay. The attorney neither responded to that letter nor filed a federal application. Id. at 2558-59.

However, even in light of those egregious circumstances, the United States Supreme Court was unwilling to decide whether that equitable tolling would in fact be warranted. Instead, the matter was remanded for the lower courts to make that determination. Id. at 2565.

Nevertheless, even if the facts in Holland would warrant equitable tolling, the same would not be true here where the facts are significantly less egregious. Although petitioner's

attorneys likewise misunderstood the law, they did not ignore efforts by their client to educate them.[15] Moreover, while petitioner urged his counsel to avoid any needless delays in seeking relief, neither he nor anyone on his team was aware that the delays were in any way prejudicial.[16] Further, while Holland's counsel ended almost all communication with his client, no such severe breakdown in communication existed here. On the contrary, although petitioner felt he deserved better treatment and more responsive counsel, even he acknowledges that he continued to communicate somewhat regularly with his counsel by telephone.[17] And unlike Holland's thwarted efforts to obtain new appointed counsel, petitioner expressly chose to continue with his privately-retained attorneys.[18] Indeed, their eventual firing resulted not from their performance but instead from a squabble between petitioner and Ms. Abramson over football tickets.[19]

---

[15] Declaration of Panos Tsolainos, Rec. Doc. 1-2, p. 3 ("I had no reason to doubt that I was being provided with accurate legal advice."). This is not, of course, to suggest that it was petitioner's responsibility to educate his attorneys. The Court only notes that the conduct of Holland's attorney was more egregious, in that he ignored the law even when it was pointed out to him.

[16] See, e.g., Declaration of Panos Tsolainos, Rec. Doc. 1-2, p. 4 ("Neither Ms. Abramson nor any attorney at Phelps Dunbar LLP, including Mr. Abramson, ever informed me that waiting so long to file the request for post-conviction relief would allow the one-year limitations period for filing my federal petition to lapse.").

[17] Declaration of Panos Tsolainos, Rec. Doc. 1-2, p. 4 (noting that "it would be weeks between conversations").

[18] Declaration of Panos Tsolainos, Rec. Doc. 1-2, p. 4 ("Although I had serious concerns about Ms. Abramson's behavior, I did not feel that I was in a position to terminate the representation as she was the only remaining attorney with knowledge of the trial record and the facts of my case. It would have taken a new lawyer significant time to get up to speed, and I considered time to be of the essence in obtaining the post-conviction relief that I was seeking.").

[19] Declaration of Panos Tsolainos, Rec. Doc. 1-2, p. 6 ("When I questioned her about this, she was very rude to me and informed me that she had not sought payment from the trust for that season's tickets and, as a result, she would be using the tickets for the championship game. It was at this point that I decided to terminate the representation by Mr. Abramson and Ms. Abramson.").

Despite petitioner's current attempt to portray his attorneys in the worst possible light, their only truly relevant error for the purposes of this proceeding was their failure to properly ascertain and understand the AEDPA's filing deadline. However, that failure amounts to nothing more than neglect and negligence, and, as such, simply does not qualify as an "extraordinary circumstance" warranting equitable tolling. See, e.g., Griffith v. Rednour, 614 F.3d 328, 331 (7th Cir. 2010) (Lawyer's misunderstanding concerning how to calculate the AEDPA's filing deadline "is not 'extraordinary'; it is all too common." ... "Such a blunder does not extend the time for filing a collateral attack."); Wisenbaker v. Farwell, 399 Fed. App'x 192, 194-95 (9th Cir. 2010) ("While [petitioner's former attorney] did give [petitioner] erroneous information about when the AEDPA statute of limitations would expire, such a garden variety claim of excusable neglect does not warrant equitable tolling."), cert. denied, 131 S.Ct. 1528 (2011); Kingdom v. Lamerque, 392 Fed. App'x 520, 522 (9th Cir. 2010) ("[T]he district court correctly determined that petitioner's evidence establishes that his lawyer erred *not* by abandoning his client, but simply by misunderstanding the filing deadline under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1). 'Garden variety' attorney error like miscalculating the AEDPA deadline is not an extraordinary circumstance warranting equitable tolling."); Dugas v. Cain, Civ. Action No. 6:09-0673, 2010 WL 2816250 (W.D. La. June 24, 2010), adopted, 2010 WL 2836278 (W.D. La. July 15, 2010). Indeed, even in Holland, the Supreme Court's decision turned not so much on the attorney's lack of knowledge concerning the filing deadline as it did on his other egregious conduct. See Holland, 130 S.Ct. at 2564 ("[The attorney] failed to file Holland's petition on time and appears to

have been unaware of the date on which the limitations period expired – two facts that, alone, might suggest simple negligence.").

In summary, the Court acknowledges that petitioner was prejudiced by his attorneys' lack of knowledge and experience in the arcane field of federal *habeas corpus* law. However, litigants must choose their counsel wisely, because a client is normally held accountable for and bound by his counsel's errors. That general rule is true even for *habeas corpus* petitioners. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753-54 (1991) ("Attorney ignorance or inadvertence is not 'cause' [for a procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' ... In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation ...."). Although the United Supreme Court has now carved out a narrow exception to that rule by holding that equitable tolling is available for *shockingly egregious misconduct* by counsel, the undersigned finds that the errors of counsel in this case simply did not rise to the level necessary to fall within that narrow exception. Accordingly, petitioner's request for equitable tolling in the instant case should be rejected.

Because petitioner is entitled to neither statutory tolling nor equitable tolling, the AEDPA required that his federal application for *habeas corpus* relief be filed no later than May 25, 2006. His federal application was not filed until October 8, 2010, and it is therefore untimely.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition of **Panos Tsolainos** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twenty-first day of June, 2011.

Daniel E. Knowles, III

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.